UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JABER ALDAHE

  Plaintiff,

v.             Case No. 06-CV-11125

MATSON NAVIGATION COMPANY, INC.,

  Defendant.
              /

**OPINION AND ORDER DENYING IN PART AND GRANTING IN PART
PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT**

Pending before the court is Plaintiff Jaber Aldahe's "Motion for Partial Summary Judgment" filed on May 12, 2006. The matter has been fully briefed and the court concludes that a hearing is unnecessary. See E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will deny in part and grant in part the motion.

**I. INTRODUCTION**

Plaintiff initiated this action on March 15, 2006, alleging that Defendant Matson Navigation Company, Inc., owes him maintenance and cure[1] as well as unearned wages because he was injured on Defendant's ship on the high seas. The court has subject matter jurisdiction under federal admiralty and maritime law. U.S. Const., Art III, § 2; 28 U.S.C. § 1333(1). Plaintiff contends that partial summary judgment is appropriate because there is no question of fact concerning his right to maintenance and cure, as well as his right to unearned

---

[1]Under federal common law, maintenance refers to the shipowner's responsibility to provide food and lodging to a seaman who suffers an injury or illness while in service of the ship and cure is the shipowner's duty to provide necessary medical care and attention. *Al-Zawkari v. American S.S. Co.*, 871 F.2d 585, 586 n. 1 (6th Cir. 1989).

wages, which he asserted, respectively, in Counts III and IV of his complaint.[2]

## II.  BACKGROUND

In 2005, Plaintiff set sail as an assistant cook on Defendant's ship, the S.S. Lurline.  (7/29/05 Accident Report, Def.'s Ex. B).  Plaintiff contends, without citation to documentary evidence in the record, that his shipping articles[3] were for an eight-month period.  Plaintiff in fact signed shipping articles on April 7, 2005, which state that a crewman may make successive voyages for up to seven months without signing new articles.  (Shipping Articles for Coastwise Trade, Def.'s Ex. E.)[4]  The articles define a voyage as "sailing from a Pacific Coast port to return to a Pacific Coast port."  (*Id.*)

On July 9, 2005, Plaintiff was injured when he inhaled harmful fumes while cleaning a gear locker, which is a confined space.  (7/11/05 Accident Report at 1-2, Def.'s Ex. A.)  Plaintiff was cleaning his mop in hot water and bleach, which reacted with a deck stripping agent that he claims he later discovered was on the mop.  (*Id.*)  He requested and received treatment three times in the following ten days for respiratory tract irritation and in each case the physician declared that Plaintiff was fit for duty.  (7/13/05 Seaman's Request for Medical Treatment, Pl.'s Ex. C; 7/20/05 Seaman's Request for Medical Treatment, Pl.'s Ex. D; 7/21/05 Seaman's Request for Medical Treatment, Pl.'s Ex. E.)

---

[2] Plaintiff's remaining two counts allege negligence and breach of warranties.

[3] Shipping articles are agreements or employment contracts between seamen and shipowners.  *Blainey v American S.S. Co.*, 990 F.2d 885, 888 (1993).

[4] While Plaintiff's signature is not entirely legible in the reproduction Defendant submitted, his Social Security number clearly appears next to the signature provided.

On July 29, 2005, Plaintiff reported feelings of anxiety and apprehension that intensified in the evening, prompting him to call the bridge to request assistance. (7/29/05 Accident Report, Def.'s Ex. B.)  Plaintiff underwent a drastic change in personality, becoming paranoid and experiencing visual and auditory hallucinations. (8/3/05 Hawaii Medical Records, Pl.'s Ex. N; 5/25/05 Letter of Dr. Mendiratta at 1, Pl.'s Ex. L.)  Plaintiff refused to eat due to discomfort in his throat and voices telling him that his crew mates would poison him.  (*Id.*)  He left the ship in Honolulu on August 2, 2005 due to his condition.  (*Id.*)[5]  The ship's doctor referred him to a local hospital with a diagnosis suggesting either medically induced psychosis or psychotic disorder.  (*Id.*)  The doctor deemed Plaintiff not fit for duty and left blank the portion of the form that would indicate for how many days Plaintiff would not be fit.  (*Id.*)

Plaintiff returned to his residence in Dearborn, Michigan, and encountered problems receiving unearned wages, maintenance and cure from Defendant.  He retained an attorney, who wrote Defendant a letter on February 14, 2006, detailing Plaintiff's condition and demanding payment of attached medical bills pursuant to Defendant's cure obligation.  (2/14/06 Letter by George Fishback at 1-2, Pl.'s Ex. I.)[6]  In a subsequent letter, Defendant sent Plaintiff $525.58 in wages, claimed that Plaintiff's medical bills were paid to date, and stated that it would explore what maintenance

---

[5] On this same date, Defendant discharged Plaintiff.  (Certificate of Discharge, Pl.'s Ex. A).

[6] The letter indicated that Defendant paid some medical bills but ignored others. (Letter by George Fishback at 1, Pl.'s Ex. I.)

3

Plaintiff was due. (4/13/06 Facsimile, Pl.'s Ex. K.) As evidence of Defendant's alleged refusal to pay maintenance, Plaintiff presents a handwritten note by Plaintiff's pharmacist to "Mr. George,"[7] indicating that Plaintiff's insurance carrier is denying payment. (5/9/06 Facsimile, Pl.'s Ex. G.) Plaintiff also submits copies of unpaid medical bills, some of which carry a final delinquency notice threatening action by a collection agency. (Prescriptions, Pl.'s Ex. M.)

Dr. Madhu Mendiratta, Plaintiff's psychiatrist, who in January 2006 began seeing Plaintiff every other week, reported that Plaintiff is "bipolar with manic episodes" and "unable to care for himself and needs someone to supervise him and his finances." (3/30/06 Letter of Dr. Mendiratta, Pl.'s Ex. H.) He further reported that Plaintiff, due to his condition, could not return to work or interact with people. (5/25/2005 Letter of Dr. Mendiratta, Pl.'s Ex. L. At 3.) Mendiratta concluded that, because Plaintiff had no history of psychiatric problems, Plaintiff's "current psychiatric illness was caused by his incident at work." (*Id.*)

### III. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do

---

[7] It may be that the pharmacist addressed the facsimile to Plaintiff's attorney, George Fishback.

4

not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The existence of some factual dispute, however, does not defeat a properly supported motion for summary judgment; the disputed factual issue must be material. *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict - 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'") (citation omitted). A fact is "material" for purposes of summary judgment when proof of that fact would have the effect of establishing or refuting an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences from the admissible evidence presented in a manner most favorable to the nonmoving party. *Dunigan v. Noble*, 390 F.3d 486, 492 (6th Cir. 2004) ("[W]e must determine 'not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed.'"). The court does not weigh the evidence to determine the truth of the matter, but must decide if the evidence produced

creates a genuine issue for trial.  *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

## IV.  DISCUSSION

### A. General Protections for Seamen Under Federal Common Law

Seamen have a "unique package of remedies" under federal common law for injuries or illness suffered while working.  *Blainey v American Steamship Co.,* 990 F.2d 885, 886 (6th Cir. 1993).  Several policy reasons underlie the development of this law, including the vulnerability of essentially indentured mariners who do hard work for relatively low wages and risk abandonment in foreign ports, and the national commerce and defense interest in favor of an effective merchant marine system.  *Id.* at 887; *see also Stevens v McGinnis, Inc.*, 82 F.3d 1353, 1356-1357 (6th Cir. 1996).  The rights to maintenance and cure and to unearned wages therefore exists regardless of other employment contracts, which cannot entirely abrogate a seamen's rights to those remedies.  *Blainey*, 990 F.2d at 887.

A seamen's implied rights, however, may be modified and defined by contract.  *Al-Zawkari v American S.S. Co.,* 871 F.2d 585, 588 (6th Cir. 1989).  Thus, a collective bargaining agreement may set the daily rate of maintenance.  *Id.* (citing *Gardiner v Sea-Land Service, Inc.*, 786 F.2d 943, 949 (9th Cir. 1986)).  The Sixth Circuit has described the shipowner's duty to provide maintenance as "the inherently vague common law maintenance obligation, the precise extent of which must be defined by the courts or by contract."  *Id.* at 588 n. 4.  Because the rights to cure and to unearned wages are

equally predicated on the contours of vague common law, those rights are also susceptible to modification by contract.

## B. Unearned Wages

There is no dispute that Plaintiff received wages through the completion of his voyage. Plaintiff contends that he is owed unearned wages for the duration of his multi-month employment contract. Defendant counters that Plaintiff was only entitled to wages up to the end of the voyage he had to leave and that he already received those wages.

Generally, "when a seaman employed under coastwise articles for a definite period of time is injured in the service of his ship, he may collect unearned wages for the entire period of employment contemplated by the contract . . . ." *Blainey,* 990 F.2d at 891. While Plaintiff's shipping articles were coastwise articles, in order to collect unearned wages he must show that his employment extended for a definite period of time beyond the end of each voyage. *Id.*

In *Blainey*, the Sixth Circuit denied unearned wages because the plaintiff could not demonstrate that his shipping articles or any other circumstances created a definite period of employment beyond the end of his voyage. *Id.* The court noted that the shipping articles did not set a definite period of employment. *Id.* The court also stressed that the relevant longstanding custom on the Great Lakes was to pay unearned wages only to the end of a voyage. *Id.* Finally, the court relied on the fact that the applicable collective bargaining agreements did not alter this custom. *Id.* Recognizing that contemporary seamen enjoyed the protection of unions and collective

7

bargaining, the court observed, "we should respect the legitimate results of that process and apply admiralty rules on unearned wages in the context of those results." *Id.* at 892.

Plaintiff also enjoys the protections of collective bargaining. (Offshore Agreement, Def.'s Ex. D.) Like in *Blainey*, Plaintiff's collective bargaining agreement makes no mention of his period of employment for purposes of unpaid wages. In addition, his shipping articles do not constitute an employment contract for a definite period of months. Rather, they merely state that the articles allowed for subsequent voyages for up to seven months without the need for signing new articles. (Shipping Articles for Coastwise Trade, Def.'s Ex. E.) Although a coastwise voyage from California to Hawaii is different in nature from the coastwise Great Lakes travel in *Blainey*, the same relevant custom regarding unearned wages prevails. Defendant presents the affidavit of its senior labor relations manager, who avers that according to union contract and longstanding practice, injured seamen who sign off a vessel are only paid unearned wages for the duration of the voyage during which they were injured. (Thomas Percival Aff., Pl.'s Ex. F.) Plaintiff's shipping articles specifically defined a voyage as "sailing from a Pacific Coast port to return to a Pacific Coast port." (Shipping Articles for Coastwise Trade, Def.'s Ex. E.) Plaintiff's insistence that *Blainey* should not apply because it relied on facts unique to Great Lakes shipping is not persuasive. *Blainey* controls because the relevant considerations upon which that decision rested are in this case equally present. Because Plaintiff received unpaid wages up to the end

of his voyage, Plaintiff has not demonstrated that summary judgment is appropriate for his claim for unearned wages.

### c. Maintenance and cure

Plaintiff next argues that he is entitled to summary judgment on his claim for maintenance and cure. When a seaman is injured while at work, a shipowner must pay maintenance and cure, even if the shipowner is not at fault, and whether or not the seaman's employment caused the injury. *Stevens*, 82 F.3d at 1357. The only relevant consideration is that the seaman was injured while in service of the ship. *Id.* at 1359. The duty to pay maintenance and cure can continue beyond the seaman's voyage. *Id.* at 1357. Here, there is no dispute that Plaintiff was injured while in service of the ship. Rather, Defendant argues that Plaintiff has failed to meet his purported contractual obligation to provide Defendant with updated medical records. Although the right to maintenance and cure is absolute, it may be modified by contract. *Al-Zawkari,* 871 F.2d at 588.

Plaintiff's collective bargaining agreement sets the daily rate of Plaintiff's maintenance and cure and requires prompt payment by Defendant "on presentation of a medical record indicating generally the nature of the illness or injury." (Offshore Agreement § 14(a), Def.'s Ex. D.) While Plaintiff's attorney contacted Defendant about unpaid medical bills and attached some of those bills to correspondence, (Pl.'s Exs. I & J), the only medical records available to Defendant were accident reports from on-board the ship and reports from the hospital where Plaintiff was treated in Hawaii (Pl.'s Exs. B-F & N, Def.'s Exs. A-B). None of these medical records indicated the ongoing nature,

much less the permanence, of Plaintiff's subsequent medical condition. Plaintiff has not presented any evidence demonstrating that he sent updated medical records to Defendant upon his return to Michigan.[8]

Nonetheless, in the course of this litigation, Plaintiff submitted a recent letter by his psychiatrist. (5/25/06 Letter of Dr. Mendiratta, Pl.'s Ex. L.) This letter details Plaintiff's condition, serves to update Defendant, and states that Plaintiff cannot return to work due to his present condition and that his condition is due to the incident on the ship. (*Id.*) There is thus no dispute that Defendant is on notice that Plaintiff is not fit for duty due to his onboard injury and should thus continue paying maintenance and cure for treatment, which Plaintiff's doctors deem necessary, for that injury. Defendant contends that under the collective bargaining agreement Plaintiff must keep Defendant apprised of his duty status. (Ralph Joy Aff., ¶ 3.) Defendant further contends that in order to continue receiving maintenance and cure Plaintiff must provide updated medical records and that each bill must be accompanied by a corresponding medical record. (*Id.* at ¶ 6.)

Defendant cites no specific provision of the collective bargaining agreement placing such obligations on Plaintiff. Under the section governing maintenance, cure and unearned wages, the relevant provision merely states that "wages, maintenance and cure shall be paid promptly on presentation of a medical record indicating generally

---

[8] Defendant's senior adjuster has averred that, upon receipt of medical information, Plaintiff's maintenance would be brought current to May 19, 2006 (Ralph Joy Aff., ¶¶ 1, 5).

10

the nature of the illness or injury."  (Offshore Agreement, § 14(a), Def.'s Ex. D.)  Given the fact that Defendant examined Plaintiff on the ship, found him not fit for duty, discharged him to a hospital in port, and received updated medical records from Plaintiff in the course of this litigation, it is clear that Defendant has sufficient knowledge of the general nature of Plaintiff's ongoing illness or injury.  The court's review of the contract reveals no other provision that might place on Plaintiff the burden of further justifying the medical bills at issue.[9]  The court will therefore grant Plaintiff's motion for summary judgment with respect to maintenance and cure.

### d. Exemplary damages

A plaintiff is owed attorney fees if the shipowner was "'callous' and recalcitrant in its 'willful and persistent' refusal to pay maintenance and cure which was 'plainly owed.'" *Stevens,* 82 F.3d at 1360 (quoting *Vaughan v Atkinson,* 369 U.S. 527, 530-531 (1962)).  Defendant's conduct, however, does not meet the above description.  Because Plaintiff did not submit updated medical records informing Defendant of his ongoing medical condition until recently, Defendant did not act unreasonably in refusing to pay maintenance and care earlier.[10]  Accordingly, Plaintiff's request for exemplary damages is denied.

---

[9]The court need not decide at what point Plaintiff must again submit medical records in support of future medical bills.  Assuming Plaintiff's illness and treatment do not change substantially, Defendant has no grounds under the contract to deny maintenance and cure.

[10]Furthermore, Plaintiff apparently did not attempt to follow the grievance procedure set out in the collective bargaining agreement, (Offshore Agreement, § 10, Def.'s Ex. D.), which further undercuts Plaintiff's request for exemplary damages.

## V.  CONCLUSION

IT IS ORDERED that Plaintiff's Motion for Partial Summary Judgment   [Dkt. # 7] is DENIED IN PART and GRANTED IN PART.  Specifically, it is GRANTED with respect to Count III, DENIED with respect to Count IV and DENIED with respect to exemplary damages.

      S/Robert H. Cleland                    
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  July 26, 2006

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 26, 2006, by electronic and/or ordinary mail.

      S/Lisa Wagner                    
Case Manager and Deputy Clerk
(313) 234-5522